☐ Check if this is an
amended filing

## Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding   **12/15**

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).**

| | |
|---|---|
| 1. **Debtor's name** | RCR International Inc. |

2. **Debtor's unique identifier**

<table>
<tr><td colspan="2">For non-individual debtors:</td></tr>
<tr><td>☐ Federal Employer Identification Number (EIN)</td><td>___ ___ – ___ ___ ___ ___ ___ ___ ___</td></tr>
<tr><td>☑ Other <u>104424031RC0002</u></td><td>. Describe identifier <u>Canadian Business Number</u>.</td></tr>
</table>

For individual debtors:

☐ Social Security number: xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN): **9** xx – xx – ____ ____ ____ ____

☐ Other _____. Describe identifier _____.

3. **Name of foreign representative(s)**

RCR International Inc.

4. **Foreign proceeding in which appointment of the foreign representative(s) occurred**

In the matter of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended: RCR International Inc. and W.J. Dennis & Company; in the Quebec Superior Court of Justice (Commercial Division) in the Judicial District of Montreal, Canada

5. **Nature of the foreign proceeding**

*Check one:*

☑ Foreign main proceeding
☐ Foreign nonmain proceeding
☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding

6. **Evidence of the foreign proceeding**

☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

_____

_____

7. **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)

☑ Yes

**8. Others entitled to notice**

Attach a list containing the names and addresses of:

(i)     all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)    all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii)   all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

**9. Addresses**

**Country where the debtor has the center of its main interests:**

Canada

**Debtor's registered office:**

1155 Réne-Lévesque Blvd W, Suite 4100

Number      Street

_____

P.O. Box

Montreal, Quebec            H3B       3V2

City          State/Province/Region      ZIP/Postal Code

Canada

Country

**Individual debtor's habitual residence:**

_____

Number      Street

_____

P.O. Box

_____

City          State/Province/Region      ZIP/Postal Code

_____

Country

**Address of foreign representative(s):**

180 rue de Normandie

Number      Street

_____

P.O. Box

Boucherville, QC            J4B       5S7

City          State/Province/Region      ZIP/Postal Code

Canada

Country

**10. Debtor's website** (URL)

www.rcrint.com

**11. Type of debtor**

*Check one:*

☑ Non-individual (*check one*):

    ☑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

    ❑ Partnership

    ❑ Other.  Specify: _____

❑ Individual

| | |
|---|---|
| **12. Why is venue proper in *this district*?** | *Check one:* |

☑ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____.

☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

_____.

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✖ _____      Mario Petraglia
Signature of foreign representative      President and Chief Executive Officer of
                                         RCR International Inc.

Executed on    01/18/2018
               MM / DD / YYYY

✖ _____      _____
Signature of foreign representative      Printed name

Executed on    _____
               MM / DD / YYYY

**14. Signature of attorney**

✖ /s/ Derek C. Abbott                    Date    01/18/2018
Signature of Attorney for foreign representative      MM   / DD / YYYY

Derek C. Abbott
Printed name

Morris, Nichols, Arsht & Tunnell LLP
Firm name

1201 N. Market St., P.O. Box 1347
Number        Street

Wilmington                              DE          19801
City                                    State       ZIP Code

(302) 658-9200                          dabbott@mnat.com
Contact phone                           Email address

Bar No. 3376                            DE
Bar number                              State

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| | ) | |
| RCR INTERNATIONAL INC., *et al.*, | ) | Case No. 18-_____ (   ) |
| | ) | |
| | ) | Joint Administration Requested |
| Debtors in a Foreign Proceeding.[1] | ) | |
| | ) | |

## VERIFIED LIST PURSUANT TO FED. R. BANKR. P. 1007(a)(4), 1008, AND 2002(q)

Pursuant to Rules 1007(a)(4), 1008, and 2002(q), the attached list contains the names and addresses of the following:

    (i)       all persons or bodies authorized to administer foreign proceedings of the Debtors;

    (ii)      all parties to litigation pending in the United States in which either Debtor is a party at the time of filing of the petition, and

    (iii)     all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

I declare under penalty of perjury under the laws of the United States of America that the information in the attached list is true and correct.

Dated: January 18, 2018
      Montréal, Québec

                                       Mario Petraglia
                                       President and Chief Executive Officer
                                       RCR International Inc., the Foreign
                                       Representative of RCR International Inc.
                                       and W.J. Dennis & Company

---

[1]    The Debtors in these jointly administered cases are RCR International Inc. and W.J. Dennis & Company. The Debtors' mailing address is 180, rue de Normandie, Boucherville (Québec), J4B 5S7, Canada. RCR International Inc.'s Canadian Business Registration Number is 104424031RC0002 and the last four digits of W.J. Dennis & Company's U.S. federal EIN are 3775.

**List of Entities Entitled to Notice Pursuant to Bankruptcy Rules 1007(a)(4) and 2002(q)**

**All persons or bodies authorized to administer foreign proceedings of the Debtors**

Debtors:

Monitor in CCAA Proceeding:

RCR INTERNATIONAL INC. &
W.J. DENNIS & COMPANY
180, RUE DE NORMANDIE
BOUCHERVILLE (QUÉBEC) J4B 5S7
CANADA

ERNST & YOUNG INC.
800 RENÉ-LÉVESQUE BLVD W,
MONTRÉAL (QUÉBEC), H3B 1X9
CANADA

**All parties to litigation pending in the United States in which either Debtor is a party at the time of filing of the petition.**

None.

**All entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code**

ACCURATE DESIGN & ILLUSTRATION
10N 981 HAWTHORNE STREET,
ELGIN, IL 60123

COMMERCE TECHNOLOGIES LLC
25736 NETWORK PLACE,
CHICAGO, IL 60673-1257

ARMACELL CANADA INC
3709 MOMENTUM PLACE,
CHICAGO, IL 60689-5337

CONWAY MACKENZIE
401 S. OLD WOODWARD AVENUE SUITE 340
BIRMINGHAM, MI 48009

BANQUE DE MONTREAL
C.P. 6044 SUCC CENTRE VILLE
MONTREAL, QC H3C 3X2
CANADA

EPICOR
SOFTWARE CORPORATION, ATT:FINANCE
SERVICES GROUP
804 LAS CIMAS PARKWAY, TX 78746

BANQUE DE MONTREAL
C.P. 6044 SUCC CENTRE VILLE
MONTREAL, QC H3C 3X2
CANADA

ESTES EXPRESS LINES
3901, WEST BROAD ST,
RICHMOND, VA 23230

BMO HARRIS BANK N.A.
111 W. MONROE STREET, 20C
CHICAGO, IL 60603

FEDEX
P.O. BOX 94515,
PALATINE, IL 60094-4515

BONDED LOGIC
24053 S ARIZONA AVE STE 151
CHANDLER, AZ 85248

FEDEX TRADE NETWORKS
15704 COLLECTIONS CENTER DR
CHICAGO, IL 60693

BPE GLOBAL
139 PIERCE STREET
SAN FRANCISCO, CA 94117

FISHER DESIGN INC
4101 SPRING GROVE AVE SUITE B
CINCINNATI, OH 45223

FORSYTH ADVISORS
8000 MARYLAND AVE SUITE 1230
ST. LOUIS, MO  63105

FREEMAN
6555 WEST SUNSET RD
LAS VEGAS, NV  89118

GODFREY RESEARCH
272 MARLBOROUGH ST AP. 3
BOSTON, MA  02115

IDEAZ
75 NUTMEG LANE
GLASTONBURY, CT  06033

ILPEA INDUSTRIES INC
7351 SOLUTION CENTER
CHICAGO, IL  60677-7003

JBS LOGISTICS & WAREHOUSING INC
5300 SOUTH CICERO, ATT: P.O. BOX 809317
CHICAGO, IL  60638

JNK CORPORATION
4255 WEST BROOK DRIVE SUITE 200
AURORA, IL  60504

KEYSTONE DISPLAY
11916 MAPLE AVENUE,
HEBRON, IL  60034

KIRKLAND AND ELLIS LLP
555 CALIFORNIA STREET SUITE 2700
SAN FRANCISCO, CA  94104

LAUREN MANUFACTURING COMPANY
PO BOX 644594
PITTSBURGH, PA  15264-4594

LEVER MANUFACTURING CORP.
420 ROUTE 17 SOUTH
MAHWAH, NJ  07430

MARTIN'S REFRIGERATED
P.O. BOX 276,
WILTON, WI  54670

NOVAGARD SOLUTIONS
PO BOX 932420
CLEVELAND, OH  44193

PEAK ROCK CAPITAL
13413 GALLERIA CIRCLE SUITE Q-300
AUSTIN, TX  78738

PERFORMANCE ELASTOMERS
7162 ST. RT 88
RAVENNA, OH  44266

PRO GROUP, INC.
P.O. BOX 6585,
ENGLEWOOD, CO  80155-6585

PRO TAPES & SPECIALTIES INC.
P.O. BOX 95000-5955
PHILADELPHIA, PA  19195-5955

PTI PLASTIC AND RUBBER GASKETS INC.
739 OLD CLEMSON RD
COLUMBIA, SC  29229

RIMTECH COMPANY
4081 E.  LA PALMA  AVE SUITE C
ANAHEIM, CA  92807

SMARTSHEET INC.
10500 NE 8th St, Suite 1300
Bellevue, WA  98004-4357

SOURCE ONE
380 PRODUCTION DRIVE,
SOUTH ELGIN, IL  60177

SOUTHERN IMPERIAL, INC
23584 NETWORK PLACE,
CHICAGO, IL  60673-1235

SUBURBAN FIXT. & INSTALL, INC.
P.O. BOX 1358,
PARK RIDGE, IL  60068-4753

TENEX CORPORATION
1282 BARCLAY BLVD
BUFFALO GROVE, IL  60089

MCMASTER-CARR SUPPLY CO.
PO BOX 7690
CHICAGO, IL 60680-7690

THE COMMONWEALTH
OF MASSACHUSETTS, WILLIAM FRACIS
GALVIN
ONE ASHBURTON PLACE-ROOM 1717
MA 02108-1512

THE M.A. PATTERSON COMPANY
530 SOUTH NOLEN DRIVE
SOUTHLAKE, TX 76092

VULCAN INDUSTRIES
EBSCO INDUSTRIES INC.DBA
300 DISPLAY DRIVE
MOODY, AL 35004

THERMWELL PRODUCTS CO INC
PO BOX 18268
NEWARK, NJ 07191-8268

VULCAN INDUSTRIES
300 DISPLAY DRIVE,
MOODY, AL 35004-2100

UNUM LIFE INS. CO OF AMERICA
P.O. BOX 406990,
ATLANTA, GA 30384-6990

W J DENNIS & COMPANY
36240 TREASURY CENTER
CHICAGO, IL 60694-6200

VALTE INTERNATIONAL INC
5483 BROOKWOOD LANE EL SOBRANTE
EL SOBRANTE, CA 94803

WALLACE HARDWARE CO. INC.
P.O. BOX 535601,
ATLANTA, GA 30353-5601

**Additional notice parties**

REBECCA L. KENNEDY
MITCHELL W. GROSSELL
THORNTON GROUT FINNIGAN LLP
BARRISTERS & SOLICITORS
SUITE 3200, TD WEST TOWER
100 WELLINGTON STREET WEST
P.O. BOX 329, TORONTO-DOMINION
CENTRE
TORONTO, ON M5K 1K7

GUY P. MARTEL
JOSEPH REYNAUD
STIKEMAN ELLIOTT LLP
1155 RENÉ-LÉVESQUE BLVD. WEST
41ST FLOOR
MONTRÉAL, QUEBEC H3B 3V2

DEREK C. ABBOTT
MATTHEW B. HARVEY
ANDREW S. GOLDEN
MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 N. MARKET STREET, 16TH FLOOR
WILMINGTON, DE 19801

MARTIN P. ROSENTHAL
ALEX F. MORRISON
MARTIN CARRIERE
ERNST & YOUNG
800 RENE-LEVESQUE BLVD W
SUITE 1900
MONTREAL QC H3B 0A2

GILES PAQUIN
FISHMAN FLANZ MELAND PAQUIN LLP
SUITE 4100
1250 RENE-LEVESQUE BLVD W
MONTREAL QC H3B 4W8

PHILIPE H. BELANGER
JOCELYN PERREAULT
MCCARTHY TETRAULT
SUITE 2500
1000 DE LA GAUCHETIERE ST WEST
MONTEAL QC H3B 0A2

EQUIPMENTS G.N. JOHNSTON LTEE
5990 AVEBURY ROAD
MISSISSAUGA, ON L5R 3R2

CHRISTIAN LACHANCE
DAVIES WARD PHILLIPS & VINEBERG
S.E.N.C.R.L., S.R.L./LLP
1501, AV. MCGILL COLLEGE, SUITE 2600
MONTREAL (QUEBEC) CANADA H3A 3N9

THE HONOURABLE MICHEL A.
PINSONNAULT
QUEBEC SUPERIOR COURT OF JUSTICE
1, RUE NOTRE-DAME EST, BUREAY 12.42
MONTREAL QC H2Y 1B6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| | ) | |
| RCR INTERNATIONAL INC., *et al.*, | ) | Case No. 18-_____ (   ) |
| | ) | |
| | ) | Joint Administration Requested |
| Debtors in a Foreign Proceeding.[1] | ) | |
| | ) | |

## CORPORATE OWNERSHIP STATEMENT

The following corporate ownership statement is made pursuant to Rules 1007(a)(4) and 7007.1 of the Federal Rules of Bankruptcy Procedure:

- W.J. Dennis & Company is wholly owned by RCR International Inc.

- RCR International Inc. is wholly owned by RCR Home Improvement Holdings, Inc.  HC Capital Holdings, LP, is the ultimate parent of RCR Home Improvement Holdings, Inc.  HC Capital Holdings GP, LLC is the general partner of HC Capital Holdings, LP.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 18, 2018
    Montréal, Québec

               Mario Petraglia
               President and Chief Executive Officer
               RCR International Inc., the Foreign
               Representative of RCR International Inc.
               and W.J. Dennis & Company

---

[1] The Debtors in these jointly administered cases are RCR International Inc. and W.J. Dennis & Company. The Debtors' mailing address is 180, rue de Normandie, Boucherville (Québec), J4B 5S7, Canada.  RCR International Inc.'s Canadian Business Registration Number is 104424031RC0002 and the last four digits of W.J. Dennis & Company's U.S. federal EIN are 3775.

CANADA

PROVINCE OF QUEBEC
DISTRICT OF MONTRÉAL

No: 500-11-053555-179

SUPERIOR COURT
(Commercial Division)

Montreal, November 21, 2017

Present: The Honourable Michel A. Pinsonnault,
J.S.C.

**IN THE MATTER OF THE *COMPANIES'
CREDITORS ARRANGEMENT ACT*, R.S.C. 1985,
c. C-36, AS AMENDED:**

**RCR INTERNATIONAL INC.**

**WJ DENNIS & COMPANY**

Applicants

-and-

**ERNST & YOUNG INC.**

Monitor

_____

**INITIAL ORDER**

**ON READING** the Applicants' *Application for the Issuance of an Initial Order* (the "**Application**") pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, C-36 (as amended the "**CCAA**") and the exhibits, the affidavit of Mario Petraglia filed in support thereof, the consent of **ERNST & YOUNG INC.** to act as monitor ("**E&Y**" or the "**Monitor**"), relying upon the submissions of counsel and being advised that the interested parties, including secured creditors who are likely to be affected by the charges created herein were given prior notice of the presentation of the Application;

**GIVEN** the provisions of the CCAA;

**WHEREFORE, THE COURT:**

[1]     **GRANTS** the Application.

[2]     **ISSUES** an order pursuant to the CCAA (the **"Order"**), divided under the following
        headings:

- Service

- Application of the CCAA

- Effective Time

- Plan of Arrangement

- Stay of Proceedings against the Applicants and the Property

- Stay of Proceedings against the Directors and Officers

- Possession of Property and Operations

- No Exercise of Rights or Remedies

- No Interference with Rights

- Continuation of Services

- Non-Derogation of Rights

- The Sale and Investor Solicitation Process

- Critical Suppliers

- Interim Financing (DIP)

- Directors' and Officers' Indemnification and Charge

- Financial Advisor Charge

- Restructuring

- Powers of the Monitor

- Priorities and General Provisions Relating to CCAA Charges

- General

### Service

[3]     **DECLARES** that sufficient prior notice of the presentation of the Application has been
        given by the Applicants to interested parties, including the secured creditors who are
        likely to be affected by the charges created herein.

## Application of the CCAA

[4]  **DECLARES** that the Applicants are debtor companies to which the CCAA applies.

## Effective time

[5]  **DECLARES** that this Order and all of its provisions are effective as of 12:01 a.m. Montreal time, province of Quebec, on the date of this Order (the **"Effective Time"**).

## Plan of Arrangement

[6]  **DECLARES** that the Applicants shall have the authority to file with this Court and to submit to their creditors one or more plans of compromise or arrangement (collectively, the **"Plan"**) in accordance with the CCAA.

## Stay of Proceedings against the Applicants and the Property

[7]  **ORDERS** that, until and including December 21, 2017, or such later date as the Court may order (the **"Stay Period"**), no proceeding or enforcement process in any court or tribunal (each, a **"Proceeding"**) shall be commenced or continued against or in respect of any of the Applicants, or affecting any of the Applicants' business operations and activities (the **"Business"**) or any of the Property (as defined herein below), including as provided in paragraph [10] hereinbelow except with leave of this Court. Any and all Proceedings currently under way against or in respect of any of the Applicants or affecting any of the Business or any of the Property are hereby stayed and suspended pending further order of this Court, the whole subject to subsection 11.1 CCAA.

[8]  **ORDERS** that the rights of Her Majesty in right of Canada and Her Majesty in right of a Province are suspended in accordance with the terms and conditions of Subsection 11.09 CCAA.

## Stay of Proceedings against the Directors and Officers

[9]  **ORDERS** that during the Stay Period and except as permitted under subsection 11.03(2) of the CCAA, no Proceeding may be commenced, or continued against any former, present or future director or officer of any of the Applicants nor against any person deemed to be a director or an officer of any of the Applicants under subsection 11.03(3) CCAA (each, a **"Director"**, and collectively the **"Directors"**) in respect of any claim against such Director which arose prior to the Effective Time, which directly or indirectly relates to any obligation of or any dealings with any of the Applicants, where it is alleged that any of these Directors is liable under any law for the payment of such claim or obligation.

## Possession of Property and Operations

[10]  **ORDERS** that the Applicants shall remain in possession and control of their respective present and future assets, rights, undertakings and properties of every nature and kind whatsoever, and wherever situated, including all proceeds thereof and any other assets used in connection with the Applicants' business, operations and activities (collectively the "**Property**"), the whole in accordance with the terms and conditions of this order including, but not limited, to paragraph [36] hereof.

## No Exercise of Rights or Remedies

[11]  **ORDERS** that during the Stay Period, and subject to, *inter alia*, subsection 11.1 CCAA, all rights and remedies of any individual, natural person, firm, corporation, partnership, limited liability company, trust, joint venture, association, organization, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of any of the Applicants, or affecting the Business, the Property or any part thereof, are hereby stayed and suspended except with leave of this Court.

[12]  **DECLARES** that, to the extent any rights, obligations, or prescription, time or limitation periods, including, without limitation, to file grievances, relating to any of the Applicants or any of the Property or the Business may expire (other than pursuant to the terms of any contracts, agreements or arrangements of any nature whatsoever), the term of such rights, obligations, or prescription, time or limitation periods shall hereby be deemed to be extended by a period equal to the Stay Period. Without limitation to the foregoing, in the event that any of the Applicants become bankrupt or a receiver as defined in subsection 243(2) of the *Bankruptcy and Insolvency Act* (Canada) (the "**BIA**") is appointed in respect of any of the Applicants, the period between the date of the Order and the day on which the Stay Period ends shall not be calculated in respect of the Applicants in determining the 30 day periods referred to in Sections 81.1 and 81.2 of the BIA.

## No Interference with Rights

[13]  **ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, resiliate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by any of the Applicants, except with the written consent of the Applicants and the Monitor, or with leave of this Court.

## Continuation of Services

[14]  **ORDERS** that during the Stay Period and subject to paragraph [16] of this Order and subsection 11.01 CCAA, all Persons having verbal or written agreements with any of the Applicants or statutory or regulatory mandates for the supply of goods or services, including without limitation all computer software, communication and other data services, centralized banking services (including in connection with the provision of credit card facilities), payroll services, insurance, transportation, utility or other goods or

services made available to any of the Applicants and all Persons having recently provided to any of the Applicants with such supply, are hereby restrained until further order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Applicants, and that the Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses, domain names, credit cards, or other services, provided in each case that the normal prices or charges for all such goods or services received after the date of the Order are paid by the Applicants, without having to provide any security deposit or any other security, in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and the Applicants, with the consent of the Monitor, or as may be ordered by this Court.

[15]    **ORDERS** that, notwithstanding anything else contained herein and subject to subsection 11.01 CCAA, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided to any of the Applicants on or after the date of this Order, nor shall any Person be under any obligation on or after the date of the Order to make further advance of money or otherwise extend any credit to any of the Applicants.

[16]    **ORDERS** that, without limiting the generality of the foregoing and subject to Section 21 of the CCAA, if applicable, cash or cash equivalents placed on deposit by any of the Applicants with any Person during the Stay Period, whether in an operating account or otherwise for themselves or for another entity, shall not be applied by such Person in reduction or repayment of amounts owing to such Person as of the date of the Order or due on or before the expiry of the Stay Period or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any financial institution from: (i) reimbursing itself for the amount of any cheques drawn by the Applicants and properly honoured by such institution, or (ii) holding the amount of any cheques or other instruments deposited into the Applicants' account until those cheques or other instruments have been honoured by the financial institution on which they have been drawn.

**Non-Derogation of Rights**

[17]    **ORDERS** that, notwithstanding the foregoing, any Person who provided any kind of letter of credit, guarantee or bond (the "**Issuing Party**") at the request of any of the Applicants shall be required to continue honouring any and all such letters, guarantees and bonds, issued on or before the date of the Order, provided that all conditions under such letters, guarantees and bonds are met save and except for defaults resulting from this Order; however, the Issuing Party shall be entitled, where applicable, to retain the bills of lading or shipping or other documents relating thereto until paid.

**Critical Suppliers**

[18]    **ORDERS** and **DECLARES** that each of the entities listed in Exhibit R-32 to the Application is a critical supplier to the Applicants as contemplated by Section 11.4 of the

CCAA (each, a "**Critical Supplier**"), and that the Applicants may, upon approval of the Monitor, supplement the list of Critical Suppliers with additional entities without seeking an amendment to this Order, provided however, that the payments to any such additional Critical Supplier may not exceed an aggregate of $200,000 per additional Critical Supplier and must be approved by the Monitor.

[19] **ORDERS** and **DECLARES** that each Critical Supplier shall continue to supply the Applicants with the goods and/or services on terms and conditions that are consistent with existing contractual arrangements, as may be amended by this Order.

[20] **AUTHORISES**, but does not require, the Applicants to make certain payments, including payments owing in arrears, to Critical Suppliers with the consent of the Monitor and the Interim Lender.

### The Sale and Investor Solicitation Process

[21] **ORDERS AND DECLARES** that the the Applicants are authorized to conduct a sale and investor solicitation process in order to solicit offers for the financing of their operations going forward or for the purchase of part or portion(s) of the Property, outside of their ordinary course of business, substantially in accordance with the sale and investor solicitation process described in **Exhibit R-28** (the "**SISP**") as well as the various milestones described therein;

[22] **ORDERS** and **DECLARES** that should the Applicants accept an offer to purchase all or portion(s) of the Property outside of their ordinary course of business in the context of the SISP or otherwise, the Applicants shall petition the Court in order to seek its authorization to sell all of such portion(s) of the Property except in the circumstances described in paragraph [36](c) of this Order where no such authorization from this Court is required.

### Interim Financing (DIP)

[23] **ORDERS** that the Applicants be and are hereby authorized to borrow, repay and reborrow from Bank of Montreal (the "**Interim Lender**") such amounts from time to time as the Applicants may consider necessary or desirable, up to a maximum principal amount of $3,000,000 outstanding at any time, on the terms and conditions as set forth in the Interim Financing Term Sheet filed as Exhibit R-29 to the Application (the "**Interim Financing Term Sheet**") and in the Interim Financing Documents (as defined hereinafter), to fund the ongoing expenditures of the Applicants and to pay such other amounts as are permitted by the terms of the Order and the Interim Financing Documents (as defined hereinafter) (the "**Interim Facility**").

[24] **ORDERS** that the Applicants are hereby authorized to execute and deliver such credit agreements, security documents and other definitive documents (collectively the "**Interim Financing Documents**") as may be required by the Interim Lender in connection with the Interim Facility and the Interim Financing Term Sheet, and the

Applicants are hereby authorized to perform all of their obligations under the Interim Financing Documents.

[25] **ORDERS** that the Applicants shall pay to the Interim Lender, when due, all amounts owing (including principal, interest, fees and expenses, including without limitation, all reasonable fees and disbursements of counsel and all other reasonably required advisers to or agents of the Interim Lender on a full indemnity basis (the "**Interim Lender Expenses**")) under the Interim Financing Documents and shall perform all of their other obligations to the Interim Lender pursuant to the Interim Financing Term Sheet, the Interim Financing Documents and the Order.

[26] **DECLARES** that all of the Property of the Applicants is hereby subject to a charge and security for an aggregate amount of $3,600,000 (such charge and security is referred to herein as the "**Interim Lender Charge**") in favour of the Interim Lender as security for all obligations of the Applicants to the Interim Lender with respect to all amounts owing (including principal, interest and the Interim Lender Expenses) under or in connection with the Interim Financing Term Sheet and the Interim Financing Documents. The Interim Lender Charge shall have the priority established by paragraphs [48] and [49] of this Order.

[27] **ORDERS** that the claims of the Interim Lender pursuant to the Interim Financing Documents shall not be compromised or arranged pursuant to the Plan or these proceedings and the Interim Lender, in that capacity, shall be treated as an unaffected creditor in these proceedings and in any Plan.

[28] **ORDERS** that the Interim Lender may:

(a) notwithstanding any other provision of the Order, take such steps from time to time as it may deem necessary or appropriate to register, record or perfect the Interim Lender Charge and the Interim Financing Documents in all jurisdictions where it deems it is appropriate; and

(b) notwithstanding the terms of the paragraph to follow, refuse to make any advance to the Applicants if the Applicants fail to meet the provisions of the Interim Financing Term Sheet and the Interim Financing Documents.

[29] **ORDERS** that the Interim Lender shall not take any enforcement steps under the Interim Financing Documents or the Interim Lender Charge without providing at least 5 business days written notice (the "**Notice Period**") of a default thereunder to the Applicants, the Monitor and to creditors whose rights are registered or published at the appropriate registers or requesting a copy of such notice. Upon expiry of such Notice Period, the Interim Lender shall be entitled to take any and all steps under the Interim Financing Documents and the Interim Lender Charge and otherwise permitted at law, but without having to send any demands under Section 244 of the BIA.

[30] **ORDERS** that, subject to further order of this Court, no order shall be made varying, rescinding, or otherwise affecting paragraphs [23] to [29] hereof unless either (a) notice of a motion for such order is served on the Interim Lender by the moving party within

seven (7) days after that party was served with the Order or (b) the Interim Lender applies for or consents to such order.

## Directors' and Officers' Indemnification and Charge

[31]    **ORDERS** that the Applicants shall indemnify their Directors from all claims relating to any obligations or liabilities they may incur and which have accrued by reason of or in relation to their respective capacities as directors or officers of the Applicants after the Effective Time, except where such obligations or liabilities were incurred as a result of such directors' or officers' gross negligence, willful misconduct or gross or intentional fault as further detailed in Section 11.51 CCAA.

[32]    **ORDERS** that the Directors of the Applicants shall be entitled to the benefit of and are hereby granted a charge and security in the Property to the extent of the aggregate amount of $600,000 (the **"Directors' Charge"**), as security for the indemnity provided in paragraph [31] of this Order as it relates to obligations and liabilities that the Directors may incur in such capacity after the Effective Time. The Directors' Charge shall have the priority set out in paragraphs [48] and [49] of this Order.

[33]    **ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Directors shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts for which the Directors are entitled to be indemnified in accordance with paragraph [31] of this Order.

## Financial Advisor Charge

[34]    **ORDERS** that the engagement of Lincoln International LLC (the **"Financial Advisor"**) pursuant to the engagement letter filed, under confidential seal, as Exhibit R-31 to the Application (the **"Engagement Letter"**) is hereby approved and the Applicants are hereby authorised to enter into and execute the Engagement Letter.

[35]    **ORDERS** that the Financial Advisor shall be entitled to the benefit of and is hereby granted a charge (the **"FA Charge"**) on the Property, which charge shall not exceed an aggregate amount of $1,000,000 and shall be security for all amounts due to be paid to the Financial Advisor pursuant to the terms of the Engagement Letter. The FA Charge shall have the priority set out in paragraphs [48] and [49] of this Order.

## Restructuring

[36]    DECLARES that, to facilitate the orderly restructuring of their business and financial affairs (the **"Restructuring"**) but subject to such requirements as are imposed by the CCAA, the Applicants shall have the right, subject to approval of the Monitor or further order of the Court, to:

(a) permanently or temporarily cease, downsize or shut down any of their operations or locations as they deem appropriate and make provision for the consequences thereof in the Plan;

(b) pursue all avenues to finance or refinance, market, convey, transfer, assign or in any other maner dispose of the Business or Property, in whole or part, subject to further order of the Court and sections 11.3 and 36 CCAA, and under reserve of subparagraph (c);

(c) convey, transfer, assign, lease, or in any other manner dispose of the Property, outside of the ordinary course of business, in whole or in part, with the authorization of this Court, unless the price in each case does not exceed $100,000 in the aggregate, in which case no authorization by this Court is required;

(d) terminate the employment of such of their employees or temporarily or permanently lay off such of their employees as they deem appropriate and, to the extent any amounts in lieu of notice, termination or severance pay or other amounts in respect thereof are not paid in the ordinary course, make provision, on such terms as may be agreed upon between the Applicants and such employee, or failing such agreement, make provision to deal with, any consequences thereof in the Plan, as the Applicants may determine;

(e) subject to the provisions of section 32 CCAA, disclaim or resiliate, any of their agreements, contracts or arrangements of any nature whatsoever, with such disclaimers or resiliation to be on such terms as may be agreed between the Applicants and the relevant party, or failing such agreement, to make provision for the consequences thereof in the Plan; and

(f) subject to section 11.3 CCAA, assign any rights and obligations of Applicants.

[37] **DECLARES** that, if a notice of disclaimer or resiliation is given to a landlord of the Applicants pursuant to section 32 of the CCAA and subparagraph [36](e) of this Order, then (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours by giving the Applicants and the Monitor 24 hours prior written notice and (b) at the effective time of the disclaimer or resiliation, the landlord shall be entitled to take possession of any such leased premises and re-lease any such leased premises to third parties on such terms as any such landlord may determine without waiver of, or prejudice to, any claims or rights of the landlord against the Applicants, provided nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

[38] **ORDERS** that the Applicants shall provide to any relevant landlord notice of the Applicants' intention to remove any fittings, fixtures, installations or leasehold improvements at least seven (7) days in advance. If the Applicants have already vacated

the leased premises, they shall not be considered to be in occupation of such location pending the resolution of any dispute between the Applicants and the landlord.

[39] **DECLARES** that, in order to facilitate the Restructuring, the Applicants may, subject to the approval of the Monitor, or further order of the Court, settle claims of customers and suppliers that are in dispute.

[40] **DECLARES** that, pursuant to subparagraph 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c.5, the Applicants are permitted, in the course of these proceedings, to disclose personal information of identifiable individuals in their possession or control to stakeholders or prospective investors, financiers, buyers or strategic partners and to their advisers (individually, a "**Third Party**"), but only to the extent desirable or required to negotiate and complete the Restructuring or the preparation and implementation of the Plan or a transaction for that purpose, provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements with the Applicants binding them to maintain and protect the privacy of such information and to limit the use of such information to the extent necessary to complete the transaction or Restructuring then under negotiation. Upon the completion of the use of personal information for the limited purpose set out herein, the personal information shall be returned to the Applicants or destroyed. In the event that a Third Party acquires personal information as part of the Restructuring or the preparation or implementation of the Plan or a transaction in furtherance thereof, such Third Party may continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Applicants.

## Powers of the Monitor

[41] **ORDERS** that E&Y is hereby appointed to monitor the business and financial affairs of the Applicants as an officer of this Court and that the Monitor, in addition to the prescribed powers and obligations, referred to in Section 23 of the CCAA:

  (a) shall, within one week following the issuance of this order, (A) publish in the Le Devoir and post on the Monitor's website (the "**Website**") a notice containing the information prescribed under the CCAA, (B) make this Order publicly available in the manner prescribed under the CCAA, (C) send, in the prescribed manner, a notice to all known creditors having a claim against the Applicants of more than $1,000, advising them that the Order is publicly available, and (D) prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder;

  (b) shall monitor the Applicants' receipts and disbursements;

  (c) shall assist the Applicants, to the extent required by the Applicants, in dealing with their creditors and other interested Persons during the Stay Period;

(d) shall assist the Applicants, to the extent required by the Applicants, with the preparation of their cash flow projections and any other projections or reports and the development, negotiation and implementation of the Plan;

(e) shall advise and assist the Applicants, to the extent required by the Applicants, with the SISP, including with the solicitation of prospective investors or purchasers;

(f) shall advise and assist the Applicants, to the extent required by the Applicants, to review the Applicants' business and assess opportunities for cost reduction, revenue enhancement and operating efficiencies;

(g) shall assist the Applicants, to the extent required by the Applicants, with the Restructuring and in their negotiations with their creditors and other interested Persons and with the holding and administering of any meetings held to consider the Plan;

(h) shall report to the Court on the state of the business and financial affairs of the Applicants or developments in these proceedings or any related proceedings within the time limits set forth in the CCAA and at such time as considered appropriate by the Monitor or as the Court may order;

(i) shall report to this Court and interested parties, including but not limited to creditors affected by the Plan, with respect to the Monitor's assessment of, and recommendations with respect to, the Plan;

(j) may retain and employ such agents, advisers and other assistants as are reasonably necessary for the purpose of carrying out the terms of the Order, including, without limitation, one or more entities related to or affiliated with the Monitor;

(k) may engage legal counsel to the extent the Monitor considers necessary in connection with the exercise of its powers or the discharge of its obligations in these proceedings and any related proceeding, under the Order or under the CCAA;

(l) may act as a "foreign representative" of the Applicants or in any other similar capacity in any insolvency, bankruptcy or reorganisation proceedings outside of Canada;

(m) may give any consent or approval as may be contemplated by the Order or the CCAA; and

(n) may perform such other duties as are required by the Order or the CCAA or by

this Court from time to time.

Unless expressly authorized to do so by this Court, the Monitor shall not otherwise interfere with the business and financial affairs carried on by the Applicants, and the Monitor is not empowered to take possession of the Property nor to manage any of the business and financial affairs of the Applicants.

[42] **ORDERS** that the Applicants and their Directors, officers, employees and agents, accountants, auditors and all other Persons having notice of the Order shall forthwith provide the Monitor with unrestricted access to all of the Business and Property, including, without limitation, the premises, books, records, data, including data in electronic form, and all other documents of the Applicants in connection with the Monitor's duties and responsibilities hereunder.

[43] **DECLARES** that the Monitor may provide creditors and other relevant stakeholders of the Applicants with information in response to requests made by them in writing addressed to the Monitor and copied to the Applicants' counsel. In the case of information that the Monitor has been advised by the Applicants is confidential, proprietary or competitive, the Monitor shall not provide such information to any Person without the consent of the Applicants unless otherwise directed by this Court.

[44] **DECLARES** that if the Monitor, in its capacity as Monitor, carries on the business of the Applicants or continues the employment of the Applicants' employees, the Monitor shall benefit from the provisions of section 11.8 of the CCAA.

[45] **DECLARES** that no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor or the carrying out the provisions of any order of this Court, except with prior leave of this Court, on at least seven days notice to the Monitor and its counsel. The entities related to or affiliated with the Monitor referred to in subparagraph [41](j) hereof shall also be entitled to the protection, benefits and privileges afforded to the Monitor pursuant to this paragraph.

[46] **ORDERS** that Applicants shall pay the reasonable fees and disbursements of the Monitor, the Monitor's legal counsel, the Applicants' legal counsel and other advisers, directly related to these proceedings, the Plan and the Restructuring, whether incurred before or after the Order, and shall provide each with a reasonable retainer in advance on account of such fees and disbursements, if so requested.

[47] **DECLARES** that the Monitor, the Monitor's legal counsel, if any, the Applicants' legal counsel and the Monitor and the Applicants' respective advisers, as security for the professional fees and disbursements incurred both before and after the making of the Order and directly related to these proceedings, the Plan and the Restructuring, be entitled to the benefit of and are hereby granted a charge and security in the Property to the extent of the aggregate amount of $500,000 (the **"Administration Charge"**), having the priority established by paragraphs [48] and [49] hereof.

**Priorities and General Provisions Relating to CCAA Charges**

[48]    **DECLARES** that the priorities of the Administration Charge, the Interim Lender Charge, the Directors' Charge and the FA Charge (collectively, the "**CCAA Charges**"), as between them with respect to any Property to which they apply, shall be as follows:

(a) first, the Administration Charge;

(b) second, the Interim Lender Charge;

(c) third, the Directors' Charge; and

(d) fourth, the FA Charge.

[49]    **DECLARES** that each of the CCAA Charges shall rank in priority to any and all other hypothecs, mortgages, liens, security interests, priorities, prior claims, charges, encumbrances or security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property charged by such Encumbrances, save and except for the assets that are the object of the security registrations in the *Register of Personal and Movable Real Rights* in favour of Equipements G.N. Johnston Ltée/G.N. Johnston Equipement Co. Ltd., under registration numbers 12-0548854-0001, 12-0817267-0001, 16-0775764-0005, and 17-0737017-0001.

[50]    **ORDERS** that, except as otherwise expressly provided for herein, the Applicants shall not grant any Encumbrances in or against any Property that rank in priority to, or *pari passu* with, any of the CCAA Charges unless the Applicants obtains the prior written consent of the Monitor and the prior approval of the Court.

[51]    **DECLARES** that each of the CCAA Charges shall attach, as of the Effective Time, to all present and future Property of the Applicants, notwithstanding any requirement for the consent of any party to any such charge or to comply with any condition precedent.

[52]    **DECLARES** that the CCAA Charges and the rights and remedies of the beneficiaries of such Charges, as applicable, shall be valid and enforceable and shall not otherwise be limited or impaired in any way by: (i) these proceedings and the declaration of insolvency made herein; (ii) any petition for a receiving order filed pursuant to the BIA in respect of the Applicants or any receiving order made pursuant to any such petition or any assignment in bankruptcy made or deemed to be made in respect of the Applicants; or (iii) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any agreement, lease, sub-lease, offer to lease or other arrangement which binds the Applicants (a "**Third Party Agreement**"), and notwithstanding any provision to the contrary in any Third Party Agreement:

(a)    the creation of any of the CCAA Charges shall not create or be deemed to

constitute a breach by the Applicants of any Third Party Agreement to which they are a party; and

(b) any of the beneficiaries of the CCAA Charges shall not have liability to any Person whatsoever as a result of any breach of any Third Party Agreement caused by or resulting from the creation of the CCAA Charges.

[53] **DECLARES** that notwithstanding: (i) these proceedings and any declaration of insolvency made herein, (ii) any petition for a receiving order filed pursuant to the BIA in respect of the Applicants and any receiving order allowing such petition or any assignment in bankruptcy made or deemed to be made in respect of the Applicants, and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by the Applicants pursuant to the Order and the granting of the CCAA Charges, do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances or other challengeable or reviewable transactions or conduct meriting an oppression remedy under any applicable law.

[54] **DECLARES** that the CCAA Charges shall be valid and enforceable as against all Property of the Applicants and against all Persons, including, without limitation, any trustee in bankruptcy, receiver, receiver and manager or interim receiver of the Applicants, for all purposes.

**General**

[55] **ORDERS** that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors, employees, legal counsel or financial advisers of the Applicants or of the Monitor in relation to the Business or Property of the Applicants, without first obtaining leave of this Court, upon five (5) days written notice to the Applicants' counsel and to all those referred to in this paragraph whom it is proposed be named in such Proceedings.

[56] **DECLARES** that the Order and any proceeding or affidavit leading to the Order, shall not, in and of themselves, constitute a default or failure to comply by the Applicants under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement.

[57] **ORDERS** that Exhibits R-27, R-31 and R-32 to the Application be kept confidential and under seal with the Court.

[58] **DECLARES** that, except as otherwise specified herein, the Applicants and the Monitor are at liberty to serve any notice, proof of claim form, proxy, circular or other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery or electronic transmission to Persons or other appropriate parties at their respective given addresses as last shown on the records of the Applicants and that any such service shall be deemed to be received on the date of delivery if by personal delivery or electronic transmission, on the following business day if delivered by courier, or three business days after mailing if by ordinary mail.

[59]   **DECLARES** that the Applicants and any party to these proceedings may serve any court materials in these proceedings on all represented parties electronically, by emailing a PDF or other electronic copy of such materials to counsels' email addresses, provided that the Applicants shall deliver "hard copies" of such materials upon request to any party as soon as practicable thereafter.

[60]   **DECLARES** that, unless otherwise provided herein, under the CCAA, or ordered by this Court, no document, order or other material need be served on any Person in respect of these proceedings, unless such Person has served a Notice of Appearance on the solicitors for the Applicants and the Monitor and has filed such notice with this Court, or appears on the service list prepared by the Monitor or its attorneys, save and except when an order is sought against a Person not previously involved in these proceedings.

[61]   **DECLARES** that the Applicants or the Monitor may, from time to time, apply to this Court for directions concerning the exercise of their respective powers, duties and rights hereunder or in respect of the proper execution of the Order on notice only to each other.

[62]   **DECLARES** that any interested Person may apply to this Court to vary or rescind the Order or seek other relief upon five (5) days notice to the Applicants, the Monitor and to their respective counsels (as set forth below), as well as to any other party likely to be affected by the order sought or upon such other notice, if any, as this Court may order, such application or motion shall be filed during the Stay Period ordered by this Order, unless otherwise ordered by this Court:

| **Monitor:** | Ernst & Young Inc.<br>Attention: Martin P. Rosenthal / Alex Morrison / Martin Carrière<br>Fax: (514) 395-4933 / (416) 943-3300 / (514) 395-4933<br>E-mail: martin.rosenthal@ca.ey.com /<br>alex.f.morrison@ca.ey.com / martin.carriere@ca.ey.com |
| --- | --- |
| **Applicants:** | Thornton Grout Finnigan LLP<br>Attention: Rebecca L. Keneddy / Mitchell W. Grossell<br>Fax: (416) 304-1313<br>E-mail: rkennedy@tgf.ca / mgrossell@tgf.ca |
| | Stikeman Elliott LLP<br>Attention: Guy Martel / Joseph Reynaud<br>Fax:        (514) 397-3493 / (514) 397-3019<br>E-mail:    gmartel@stikeman.com /<br>jreynaud@stikeman.com |
| **Interim Lender:** | McCarthy Tétrault LLP<br>Attention: Philippe H. Bélanger / Jocelyn Perreault<br>Fax: (514) 875-6246<br>E-mail: pbelanger@mccarthy.ca / jperreault@mccarthy.ca |

[63] **DECLARES** that the Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada.

[64] **DECLARES** that the Monitor, with the prior consent of the Applicants, shall be authorized to apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders which aid and complement the Order and any subsequent orders of this Court and, without limitation to the foregoing, an order under Chapter 15 of the *U.S. Bankruptcy Code*, for which the Monitor shall be the foreign representative of the Applicants. All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Monitor as may be deemed necessary or appropriate for that purpose.

[65] **REQUESTS** the aid and recognition of any Court or administrative body in any Province of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the United States of America and any court or administrative body elsewhere, to act in aid of and to be complementary to this Court in carrying out the terms of the Order.

[66] **ORDERS** the provisional execution of the Order notwithstanding any appeal.

[67] **WITHOUT COSTS**.

Montreal, November 21, 2017

_____ J.S.C.

The Honourable Michel A. Pinsonnault, J.S.C.

## SUPERIOR COURT

(Commercial Division)

CANADA

PROVINCE OF QUÉBEC
DISTRICT OF MONTRÉAL

**No: 500-11-053555-179**

DATE: December 20, 2017

---

**PRESENT: THE HONOURABLE MICHEL A. PINSONNAULT, J.S.C.**

---

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED:**

**RCR INTERNATIONAL INC.**

-and-

**WJ DENNIS & COMPANY**

      Applicants

-and-

**ERNST & YOUNG INC.**

      Monitor

---

## ORDER EXTENDING THE STAY OF PROCEEDINGS

---

[1]    **CONSIDERING** the Applicants' motion entitled *Motion for the Issuance of an Order Extending the Stay of Proceedings* (the "**Motion**");

[2]    **GIVEN** the provisions of the Initial Order granted by this Court in this matter on November 21, 2017 (the "**Initial Order**");

[3] **CONSIDERING** that unless extended, the Stay Period (as defined in the Initial Order) will expire on December 21, 2017;

[4] **GIVEN** the provisions of the *Companies Creditors Arrangement Act* (R.S.C., 1985, c. C-36), as amended;

**WHEREFORE, THE COURT:**

[5] **GRANTS** the Motion;

[6] **DECLARES** that the notices given for the presentation of the Motion are proper and sufficient;

[7] **EXTENDS** the Stay Period (as defined in the Initial Order) until March 2, 2018;

[8] **ORDERS** the provisional execution of this Order, notwithstanding any appeal and without the necessity of furnishing any security;

[9] **THE WHOLE, WITHOUT COSTS.**

The Honourable Michel A. Pinsonnault, J.S.C.

CANADA

PROVINCE OF QUEBEC
DISTRICT OF MONTRÉAL

No: 500-11-053555-179

SUPERIOR COURT
(Commercial Division)

Montreal, January 16, 2018

Present: The Honourable Michel A. Pinsonnault, J.S.C.

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED:

**RCR INTERNATIONAL INC.**

**WJ DENNIS & COMPANY**

Applicants

-and-

**ERNST & YOUNG INC.**

Monitor

---

### AMENDED AND RESTATED INITIAL ORDER

**WHEREAS** on November 21, 2017, RCR International Inc. and W.J. Dennis & Company filed an *Application for the Issuance of an Initial Order* (the "**Application**") pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985 C-36, as amended (the "**CCAA**");

**WHEREAS** the Honourable Michel A. Pinsonnault, J.S.C., issued an initial order under the CCAA as regards the Applicants on November 21, 2017;

**ON READING** the Applicants' *Motion to Amend and Restate the Initial Order* and the exhibits (the "**Motion**"), and relying upon the submissions of counsel and being advised that the interested parties, including secured creditors who are likely to be affected by the charges created herein were given prior notice of the presentation of the Application;

**GIVEN** the provisions of the CCAA;

**WHEREFORE, THE COURT**:

[1]     **GRANTS** the Motion.

JP 1736

[2] **ISSUES** an order pursuant to the CCAA (the "**Order**"), divided under the following headings:

- Service
- Application of the CCAA
- Effective Time
- Plan of Arrangement
- Stay of Proceedings against the Applicants and the Property
- Stay of Proceedings against the Directors and Officers
- Possession of Property and Operations
- No Exercise of Rights or Remedies
- No Interference with Rights
- Continuation of Services
- Non-Derogation of Rights
- The Sale and Investor Solicitation Process
- Critical Suppliers
- Interim Financing (DIP)
- Directors' and Officers' Indemnification and Charge
- Financial Advisor Charge
- Restructuring
- Powers of the Monitor
- Priorities and General Provisions Relating to CCAA Charges
- General

**Service**

[3] **DECLARES** that sufficient prior notice of the presentation of the Application has been given by the Applicants to interested parties, including the secured creditors who are likely to be affected by the charges created herein.

- 3 -

**Application of the CCAA**

[4]    **DECLARES** that the Applicants are debtor companies to which the CCAA applies.

**Effective time**

[5]    **DECLARES** that this Order and all of its provisions are effective as of 12:01 a.m. Montreal time, province of Quebec, on the date of this Order (the "**Effective Time**").

**Plan of Arrangement**

[6]    **DECLARES** that the Applicants shall have the authority to file with this Court and to submit to their creditors one or more plans of compromise or arrangement (collectively, the "**Plan**") in accordance with the CCAA.

**Stay of Proceedings against the Applicants and the Property**

[7]    **ORDERS** that, until and including December 21, 2017, or such later date as the Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of any of the Applicants, or affecting any of the Applicants' business operations and activities (the "**Business**") or any of the Property (as defined herein below), including as provided in paragraph [10] hereinbelow except with leave of this Court. Any and all Proceedings currently under way against or in respect of any of the Applicants or affecting any of the Business or any of the Property are hereby stayed and suspended pending further order of this Court, the whole subject to subsection 11.1 CCAA.

[8]    **ORDERS** that the rights of Her Majesty in right of Canada and Her Majesty in right of a Province are suspended in accordance with the terms and conditions of Subsection 11.09 CCAA.

**Stay of Proceedings against the Directors and Officers**

[9]    **ORDERS** that during the Stay Period and except as permitted under subsection 11.03(2) of the CCAA, no Proceeding may be commenced, or continued against any former, present or future director or officer of any of the Applicants nor against any person deemed to be a director or an officer of any of the Applicants under subsection 11.03(3) CCAA (each, a "**Director**", and collectively the "**Directors**") in respect of any claim against such Director which arose prior to the Effective Time, which directly or indirectly relates to any obligation of or any dealings with any of the Applicants, where it is alleged that any of these Directors is liable under any law for the payment of such claim or obligation.

**Possession of Property and Operations**

[10]    **ORDERS** that the Applicants shall remain in possession and control of their respective present and future assets, rights, undertakings and properties of every nature and kind whatsoever, and wherever situated, including all proceeds thereof and any other assets used in connection with the Applicants' business, operations and activities (collectively

the "**Property**"), the whole in accordance with the terms and conditions of this order including, but not limited, to paragraph [36] hereof.

**No Exercise of Rights or Remedies**

[11]   **ORDERS** that during the Stay Period, and subject to, *inter alia*, subsection 11.1 CCAA, all rights and remedies of any individual, natural person, firm, corporation, partnership, limited liability company, trust, joint venture, association, organization, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of any of the Applicants, or affecting the Business, the Property or any part thereof, are hereby stayed and suspended except with leave of this Court.

[12]   **DECLARES** that, to the extent any rights, obligations, or prescription, time or limitation periods, including, without limitation, to file grievances, relating to any of the Applicants or any of the Property or the Business may expire (other than pursuant to the terms of any contracts, agreements or arrangements of any nature whatsoever), the term of such rights, obligations, or prescription, time or limitation periods shall hereby be deemed to be extended by a period equal to the Stay Period. Without limitation to the foregoing, in the event that any of the Applicants become bankrupt or a receiver as defined in subsection 243(2) of the *Bankruptcy and Insolvency Act* (Canada) (the "**BIA**") is appointed in respect of any of the Applicants, the period between the date of the Order and the day on which the Stay Period ends shall not be calculated in respect of the Applicants in determining the 30 day periods referred to in Sections 81.1 and 81.2 of the BIA.

**No Interference with Rights**

[13]   **ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, resiliate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by any of the Applicants, except with the written consent of the Applicants and the Monitor, or with leave of this Court.

**Continuation of Services**

[14]   **ORDERS** that during the Stay Period and subject to paragraph [16] of this Order and subsection 11.01 CCAA, all Persons having verbal or written agreements with any of the Applicants or statutory or regulatory mandates for the supply of goods or services, including without limitation all computer software, communication and other data services, centralized banking services (including in connection with the provision of credit card facilities), payroll services, insurance, transportation, utility or other goods or services made available to any of the Applicants and all Persons having recently provided to any of the Applicants with such supply, are hereby restrained until further order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Applicants, and that the Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses, domain names, credit cards, or other services, provided in each case that the normal prices or charges for all such goods or services received after the date of the Order are paid by the Applicants, without having to provide

any security deposit or any other security, in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and the Applicants, with the consent of the Monitor, or as may be ordered by this Court.

[15]    **ORDERS** that, notwithstanding anything else contained herein and subject to subsection 11.01 CCAA, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided to any of the Applicants on or after the date of this Order, nor shall any Person be under any obligation on or after the date of the Order to make further advance of money or otherwise extend any credit to any of the Applicants.

[16]    **ORDERS** that, without limiting the generality of the foregoing and subject to Section 21 of the CCAA, if applicable, cash or cash equivalents placed on deposit by any of the Applicants with any Person during the Stay Period, whether in an operating account or otherwise for themselves or for another entity, shall not be applied by such Person in reduction or repayment of amounts owing to such Person as of the date of the Order or due on or before the expiry of the Stay Period or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any financial institution from: (i) reimbursing itself for the amount of any cheques drawn by the Applicants and properly honoured by such institution, or (ii) holding the amount of any cheques or other instruments deposited into the Applicants' account until those cheques or other instruments have been honoured by the financial institution on which they have been drawn.

**Non-Derogation of Rights**

[17]    **ORDERS** that, notwithstanding the foregoing, any Person who provided any kind of letter of credit, guarantee or bond (the **"Issuing Party"**) at the request of any of the Applicants shall be required to continue honouring any and all such letters, guarantees and bonds, issued on or before the date of the Order, provided that all conditions under such letters, guarantees and bonds are met save and except for defaults resulting from this Order; however, the Issuing Party shall be entitled, where applicable, to retain the bills of lading or shipping or other documents relating thereto until paid.

**Critical Suppliers**

[18]    **ORDERS** and **DECLARES** that each of the entities listed in Exhibit R-32 to the Application is a critical supplier to the Applicants as contemplated by Section 11.4 of the CCAA (each, a **"Critical Supplier"**), and that the Applicants may, upon approval of the Monitor, supplement the list of Critical Suppliers with additional entities without seeking an amendment to this Order, provided however, that the payments to any such additional Critical Supplier may not exceed an aggregate of $200,000 per additional Critical Supplier and must be approved by the Monitor.

[19]    **ORDERS** and **DECLARES** that each Critical Supplier shall continue to supply the Applicants with the goods and/or services on terms and conditions that are consistent with existing contractual arrangements, as may be amended by this Order.

[20] **AUTHORISES**, but does not require, the Applicants to make certain payments, including payments owing in arrears, to Critical Suppliers with the consent of the Monitor and the Interim Lender.

## The Sale and Investor Solicitation Process

[21] **ORDERS AND DECLARES** that the the Applicants are authorized to conduct a sale and investor solicitation process in order to solicit offers for the financing of their operations going forward or for the purchase of part or portion(s) of the Property, outside of their ordinary course of business, substantially in accordance with the sale and investor solicitation process described in **Exhibit R-28** (the "**SISP**") as well as the various milestones described therein;

[22] **ORDERS** and **DECLARES** that should the Applicants accept an offer to purchase all or portion(s) of the Property outside of their ordinary course of business in the context of the SISP or otherwise, the Applicants shall petition the Court in order to seek its authorization to sell all of such portion(s) of the Property except in the circumstances described in paragraph [36](c) of this Order where no such authorization from this Court is required.

## Interim Financing (DIP)

[23] **ORDERS** that the Applicants be and are hereby authorized to borrow, repay and reborrow from Bank of Montreal (the "**Interim Lender**") such amounts from time to time as the Applicants may consider necessary or desirable, up to a maximum principal amount of $3,000,000 outstanding at any time, on the terms and conditions as set forth in the Interim Financing Term Sheet filed as Exhibit R-29 to the Application (the "**Interim Financing Term Sheet**") and in the Interim Financing Documents (as defined hereinafter), to fund the ongoing expenditures of the Applicants and to pay such other amounts as are permitted by the terms of the Order and the Interim Financing Documents (as defined hereinafter) (the "**Interim Facility**").

[24] **ORDERS** that the Applicants are hereby authorized to execute and deliver such credit agreements, security documents and other definitive documents (collectively the "**Interim Financing Documents**") as may be required by the Interim Lender in connection with the Interim Facility and the Interim Financing Term Sheet, and the Applicants are hereby authorized to perform all of their obligations under the Interim Financing Documents.

[25] **ORDERS** that the Applicants shall pay to the Interim Lender, when due, all amounts owing (including principal, interest, fees and expenses, including without limitation, all reasonable fees and disbursements of counsel and all other reasonably required advisers to or agents of the Interim Lender on a full indemnity basis (the "**Interim Lender Expenses**")) under the Interim Financing Documents and shall perform all of their other obligations to the Interim Lender pursuant to the Interim Financing Term Sheet, the Interim Financing Documents and the Order.

[26] **DECLARES** that all of the Property of the Applicants is hereby subject to a charge and security for an aggregate amount of $3,600,000 (such charge and security is referred to herein as the "**Interim Lender Charge**") in favour of the Interim Lender as security for all

obligations of the Applicants to the Interim Lender with respect to all amounts owing (including principal, interest and the Interim Lender Expenses) under or in connection with the Interim Financing Term Sheet and the Interim Financing Documents. The Interim Lender Charge shall have the priority established by paragraphs [48] and [49] of this Order.

[27]     **ORDERS** that the claims of the Interim Lender pursuant to the Interim Financing Documents shall not be compromised or arranged pursuant to the Plan or these proceedings and the Interim Lender, in that capacity, shall be treated as an unaffected creditor in these proceedings and in any Plan.

[28]     **ORDERS** that the Interim Lender may:

(a)     notwithstanding any other provision of the Order, take such steps from time to time as it may deem necessary or appropriate to register, record or perfect the Interim Lender Charge and the Interim Financing Documents in all jurisdictions where it deems it is appropriate; and

(b)     notwithstanding the terms of the paragraph to follow, refuse to make any advance to the Applicants if the Applicants fail to meet the provisions of the Interim Financing Term Sheet and the Interim Financing Documents.

[29]     **ORDERS** that the Interim Lender shall not take any enforcement steps under the Interim Financing Documents or the Interim Lender Charge without providing at least 5 business days written notice (the "**Notice Period**") of a default thereunder to the Applicants, the Monitor and to creditors whose rights are registered or published at the appropriate registers or requesting a copy of such notice. Upon expiry of such Notice Period, the Interim Lender shall be entitled to take any and all steps under the Interim Financing Documents and the Interim Lender Charge and otherwise permitted at law, but without having to send any demands under Section 244 of the BIA.

[30]     **ORDERS** that, subject to further order of this Court, no order shall be made varying, rescinding, or otherwise affecting paragraphs [23] to [29] hereof unless either (a) notice of a motion for such order is served on the Interim Lender by the moving party within seven (7) days after that party was served with the Order or (b) the Interim Lender applies for or consents to such order.

## Directors' and Officers' Indemnification and Charge

[31]     **ORDERS** that the Applicants shall indemnify their Directors from all claims relating to any obligations or liabilities they may incur and which have accrued by reason of or in relation to their respective capacities as directors or officers of the Applicants after the Effective Time, except where such obligations or liabilities were incurred as a result of such directors' or officers' gross negligence, willful misconduct or gross or intentional fault as further detailed in Section 11.51 CCAA.

[32]     **ORDERS** that the Directors of the Applicants shall be entitled to the benefit of and are hereby granted a charge and security in the Property to the extent of the aggregate amount of $600,000 (the "**Directors' Charge**"), as security for the indemnity provided in paragraph [31] of this Order as it relates to obligations and liabilities that the Directors

may incur in such capacity after the Effective Time. The Directors' Charge shall have the priority set out in paragraphs [48] and [49] of this Order.

[33]  **ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Directors shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts for which the Directors are entitled to be indemnified in accordance with paragraph [31] of this Order.

**Financial Advisor Charge**

[34]  **ORDERS** that the engagement of Lincoln International LLC (the "**Financial Advisor**") pursuant to the engagement letter filed, under confidential seal, as Exhibit R-31 to the Application (the "**Engagement Letter**") is hereby approved and the Applicants are hereby authorised to enter into and execute the Engagement Letter.

[35]  **ORDERS** that the Financial Advisor shall be entitled to the benefit of and is hereby granted a charge (the "**FA Charge**") on the Property, which charge shall not exceed an aggregate amount of $1,000,000 and shall be security for all amounts due to be paid to the Financial Advisor pursuant to the terms of the Engagement Letter. The FA Charge shall have the priority set out in paragraphs [48] and [49] of this Order.

**Restructuring**

[36]  DECLARES that, to facilitate the orderly restructuring of their business and financial affairs (the "**Restructuring**") but subject to such requirements as are imposed by the CCAA, the Applicants shall have the right, subject to approval of the Monitor or further order of the Court, to:

(a)  permanently or temporarily cease, downsize or shut down any of their operations or locations as they deem appropriate and make provision for the consequences thereof in the Plan;

(b)  pursue all avenues to finance or refinance, market, convey, transfer, assign or in any other maner dispose of the Business or Property, in whole or part, subject to further order of the Court and sections 11.3 and 36 CCAA, and under reserve of subparagraph (c);

(c)  convey, transfer, assign, lease, or in any other manner dispose of the Property, outside of the ordinary course of business, in whole or in part, with the authorization of this Court, unless the price in each case does not exceed $100,000 in the aggregate, in which case no authorization by this Court is required;

(d)  terminate the employment of such of their employees or temporarily or permanently lay off such of their employees as they deem appropriate and, to the extent any amounts in lieu of notice, termination or severance pay or other amounts in respect thereof are not paid in the ordinary course, make provision,

on such terms as may be agreed upon between the Applicants and such employee, or failing such agreement, make provision to deal with, any consequences thereof in the Plan, as the Applicants may determine;

(e) subject to the provisions of section 32 CCAA, disclaim or resiliate, any of their agreements, contracts or arrangements of any nature whatsoever, with such disclaimers or resiliation to be on such terms as may be agreed between the Applicants and the relevant party, or failing such agreement, to make provision for the consequences thereof in the Plan; and

(f) subject to section 11.3 CCAA, assign any rights and obligations of Applicants.

[37] **DECLARES** that, if a notice of disclaimer or resiliation is given to a landlord of the Applicants pursuant to section 32 of the CCAA and subparagraph [36](e) of this Order, then (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours by giving the Applicants and the Monitor 24 hours prior written notice and (b) at the effective time of the disclaimer or resiliation, the landlord shall be entitled to take possession of any such leased premises and re-lease any such leased premises to third parties on such terms as any such landlord may determine without waiver of, or prejudice to, any claims or rights of the landlord against the Applicants, provided nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

[38] **ORDERS** that the Applicants shall provide to any relevant landlord notice of the Applicants' intention to remove any fittings, fixtures, installations or leasehold improvements at least seven (7) days in advance. If the Applicants have already vacated the leased premises, they shall not be considered to be in occupation of such location pending the resolution of any dispute between the Applicants and the landlord.

[39] **DECLARES** that, in order to facilitate the Restructuring, the Applicants may, subject to the approval of the Monitor, or further order of the Court, settle claims of customers and suppliers that are in dispute.

[40] **DECLARES** that, pursuant to subparagraph 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c.5, the Applicants are permitted, in the course of these proceedings, to disclose personal information of identifiable individuals in their possession or control to stakeholders or prospective investors, financiers, buyers or strategic partners and to their advisers (individually, a "**Third Party**"), but only to the extent desirable or required to negotiate and complete the Restructuring or the preparation and implementation of the Plan or a transaction for that purpose, provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements with the Applicants binding them to maintain and protect the privacy of such information and to limit the use of such information to the extent necessary to complete the transaction or Restructuring then under negotiation. Upon the completion of the use of personal information for the limited purpose set out herein, the personal information shall be returned to the Applicants or destroyed. In the event that a Third Party acquires personal information as part of the Restructuring or the preparation or implementation of the Plan or a transaction in furtherance thereof, such

Third Party may continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Applicants.

**Powers of the Monitor**

[41]  **ORDERS** that E&Y is hereby appointed to monitor the business and financial affairs of the Applicants as an officer of this Court and that the Monitor, in addition to the prescribed powers and obligations, referred to in Section 23 of the CCAA:

(a)  shall, within one week following the issuance of this order, (A) publish in the Le Devoir and post on the Monitor's website (the "**Website**") a notice containing the information prescribed under the CCAA, (B) make this Order publicly available in the manner prescribed under the CCAA, (C) send, in the prescribed manner, a notice to all known creditors having a claim against the Applicants of more than $1,000, advising them that the Order is publicly available, and (D) prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder;

(b)  shall monitor the Applicants' receipts and disbursements;

(c)  shall assist the Applicants, to the extent required by the Applicants, in dealing with their creditors and other interested Persons during the Stay Period;

(d)  shall assist the Applicants, to the extent required by the Applicants, with the preparation of their cash flow projections and any other projections or reports and the development, negotiation and implementation of the Plan;

(e)  shall advise and assist the Applicants, to the extent required by the Applicants, with the SISP, including with the solicitation of prospective investors or purchasers;

(f)  shall advise and assist the Applicants, to the extent required by the Applicants, to review the Applicants' business and assess opportunities for cost reduction, revenue enhancement and operating efficiencies;

(g)  shall assist the Applicants, to the extent required by the Applicants, with the Restructuring and in their negotiations with their creditors and other interested Persons and with the holding and administering of any meetings held to consider the Plan;

(h)  shall report to the Court on the state of the business and financial affairs of the Applicants or developments in these proceedings or any related proceedings within the time limits set forth in the CCAA and at such time as considered appropriate by the Monitor or as the Court may order;

(i)  shall report to this Court and interested parties, including but not limited to creditors affected by the Plan, with respect to the Monitor's assessment of, and

recommendations with respect to, the Plan;

(j)     may retain and employ such agents, advisers and other assistants as are reasonably necessary for the purpose of carrying out the terms of the Order, including, without limitation, one or more entities related to or affiliated with the Monitor;

(k)     may engage legal counsel to the extent the Monitor considers necessary in connection with the exercise of its powers or the discharge of its obligations in these proceedings and any related proceeding, under the Order or under the CCAA;

(l)     may act as a "foreign representative" of the Applicants or in any other similar capacity in any insolvency, bankruptcy or reorganisation proceedings outside of Canada;

(m)     may give any consent or approval as may be contemplated by the Order or the CCAA; and

(n)     may perform such other duties as are required by the Order or the CCAA or by this Court from time to time.

Unless expressly authorized to do so by this Court, the Monitor shall not otherwise interfere with the business and financial affairs carried on by the Applicants, and the Monitor is not empowered to take possession of the Property nor to manage any of the business and financial affairs of the Applicants.

[42]     **ORDERS** that the Applicants and their Directors, officers, employees and agents, accountants, auditors and all other Persons having notice of the Order shall forthwith provide the Monitor with unrestricted access to all of the Business and Property, including, without limitation, the premises, books, records, data, including data in electronic form, and all other documents of the Applicants in connection with the Monitor's duties and responsibilities hereunder.

[43]     **DECLARES** that the Monitor may provide creditors and other relevant stakeholders of the Applicants with information in response to requests made by them in writing addressed to the Monitor and copied to the Applicants' counsel. In the case of information that the Monitor has been advised by the Applicants is confidential, proprietary or competitive, the Monitor shall not provide such information to any Person without the consent of the Applicants unless otherwise directed by this Court.

[44]     **DECLARES** that if the Monitor, in its capacity as Monitor, carries on the business of the Applicants or continues the employment of the Applicants' employees, the Monitor shall benefit from the provisions of section 11.8 of the CCAA.

[45]     **DECLARES** that no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor or the carrying out the provisions of any order of this Court, except with prior leave of this Court, on at least seven days notice to the Monitor and its counsel. The entities related to or affiliated with

the Monitor referred to in subparagraph [41](j) hereof shall also be entitled to the protection, benefits and privileges afforded to the Monitor pursuant to this paragraph.

[46]     **ORDERS** that Applicants shall pay the reasonable fees and disbursements of the Monitor, the Monitor's legal counsel, the Applicants' legal counsel and other advisers, directly related to these proceedings, the Plan and the Restructuring, whether incurred before or after the Order, and shall provide each with a reasonable retainer in advance on account of such fees and disbursements, if so requested.

[47]     **DECLARES** that the Monitor, the Monitor's legal counsel, if any, the Applicants' legal counsel and the Monitor and the Applicants' respective advisers, as security for the professional fees and disbursements incurred both before and after the making of the Order and directly related to these proceedings, the Plan and the Restructuring, be entitled to the benefit of and are hereby granted a charge and security in the Property to the extent of the aggregate amount of $500,000 (the "**Administration Charge**"), having the priority established by paragraphs [48] and [49] hereof.

### Priorities and General Provisions Relating to CCAA Charges

[48]     **DECLARES** that the priorities of the Administration Charge, the Interim Lender Charge, the Directors' Charge and the FA Charge (collectively, the "**CCAA Charges**"), as between them with respect to any Property to which they apply, shall be as follows:

(a) first, the Administration Charge;

(b) second, the Interim Lender Charge;

(c) third, the Directors' Charge; and

(d) fourth, the FA Charge.

[49]     **DECLARES** that each of the CCAA Charges shall rank in priority to any and all other hypothecs, mortgages, liens, security interests, priorities, prior claims, charges, encumbrances or security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property charged by such Encumbrances, save and except for the assets that are the object of the security registrations in the *Register of Personal and Movable Real Rights* in favour of Equipements G.N. Johnston Ltée/G.N. Johnston Equipement Co. Ltd., under registration numbers 12-0548854-0001, 12-0817267-0001, 16-0775764-0005, and 17-0737017-0001.

[50]     **ORDERS** that, except as otherwise expressly provided for herein, the Applicants shall not grant any Encumbrances in or against any Property that rank in priority to, or *pari passu* with, any of the CCAA Charges unless the Applicants obtains the prior written consent of the Monitor and the prior approval of the Court.

[51]     **DECLARES** that each of the CCAA Charges shall attach, as of the Effective Time, to all present and future Property of the Applicants, notwithstanding any requirement for the consent of any party to any such charge or to comply with any condition precedent.

[52] **DECLARES** that the CCAA Charges and the rights and remedies of the beneficiaries of such Charges, as applicable, shall be valid and enforceable and shall not otherwise be limited or impaired in any way by: (i) these proceedings and the declaration of insolvency made herein; (ii) any petition for a receiving order filed pursuant to the BIA in respect of the Applicants or any receiving order made pursuant to any such petition or any assignment in bankruptcy made or deemed to be made in respect of the Applicants; or (iii) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any agreement, lease, sub-lease, offer to lease or other arrangement which binds the Applicants (a "**Third Party Agreement**"), and notwithstanding any provision to the contrary in any Third Party Agreement:

    (a)    the creation of any of the CCAA Charges shall not create or be deemed to constitute a breach by the Applicants of any Third Party Agreement to which they are a party; and

    (b)    any of the beneficiaries of the CCAA Charges shall not have liability to any Person whatsoever as a result of any breach of any Third Party Agreement caused by or resulting from the creation of the CCAA Charges.

[53] **DECLARES** that notwithstanding: (i) these proceedings and any declaration of insolvency made herein, (ii) any petition for a receiving order filed pursuant to the BIA in respect of the Applicants and any receiving order allowing such petition or any assignment in bankruptcy made or deemed to be made in respect of the Applicants, and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by the Applicants pursuant to the Order and the granting of the CCAA Charges, do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances or other challengeable or reviewable transactions or conduct meriting an oppression remedy under any applicable law.

[54] **DECLARES** that the CCAA Charges shall be valid and enforceable as against all Property of the Applicants and against all Persons, including, without limitation, any trustee in bankruptcy, receiver, receiver and manager or interim receiver of the Applicants, for all purposes.

**General**

[55] **ORDERS** that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors, employees, legal counsel or financial advisers of the Applicants or of the Monitor in relation to the Business or Property of the Applicants, without first obtaining leave of this Court, upon five (5) days written notice to the Applicants' counsel and to all those referred to in this paragraph whom it is proposed be named in such Proceedings.

[56] **DECLARES** that the Order and any proceeding or affidavit leading to the Order, shall not, in and of themselves, constitute a default or failure to comply by the Applicants under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement.

[57]  **ORDERS** that Exhibits R-27, R-31 and R-32 to the Application be kept confidential and under seal with the Court.

[58]  **DECLARES** that, except as otherwise specified herein, the Applicants and the Monitor are at liberty to serve any notice, proof of claim form, proxy, circular or other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery or electronic transmission to Persons or other appropriate parties at their respective given addresses as last shown on the records of the Applicants and that any such service shall be deemed to be received on the date of delivery if by personal delivery or electronic transmission, on the following business day if delivered by courier, or three business days after mailing if by ordinary mail.

[59]  **DECLARES** that the Applicants and any party to these proceedings may serve any court materials in these proceedings on all represented parties electronically, by emailing a PDF or other electronic copy of such materials to counsels' email addresses, provided that the Applicants shall deliver "hard copies" of such materials upon request to any party as soon as practicable thereafter.

[60]  **DECLARES** that, unless otherwise provided herein, under the CCAA, or ordered by this Court, no document, order or other material need be served on any Person in respect of these proceedings, unless such Person has served a Notice of Appearance on the solicitors for the Applicants and the Monitor and has filed such notice with this Court, or appears on the service list prepared by the Monitor or its attorneys, save and except when an order is sought against a Person not previously involved in these proceedings.

[61]  **DECLARES** that the Applicants or the Monitor may, from time to time, apply to this Court for directions concerning the exercise of their respective powers, duties and rights hereunder or in respect of the proper execution of the Order on notice only to each other.

[62]  **DECLARES** that any interested Person may apply to this Court to vary or rescind the Order or seek other relief upon five (5) days notice to the Applicants, the Monitor and to their respective counsels (as set forth below), as well as to any other party likely to be affected by the order sought or upon such other notice, if any, as this Court may order, such application or motion shall be filed during the Stay Period ordered by this Order, unless otherwise ordered by this Court:

      **Monitor:**      Ernst & Young Inc.
                        Attention: Martin P. Rosenthal / Alex Morrison / Martin Carrière
                        Fax: (514) 395-4933 / (416) 943-3300 / (514) 395-4933
                        E-mail: martin.rosenthal@ca.ey.com /
                        alex.f.morrison@ca.ey.com / martin.carriere@ca.ey.com

- 15 -

**Applicants:** Thornton Grout Finnigan LLP
Attention: Rebecca L. Keneddy / Mitchell W. Grossell
Fax: (416) 304-1313
E-mail: rkennedy@tgf.ca / mgrossell@tgf.ca

Stikeman Elliott LLP
Attention: Guy Martel / Joseph Reynaud
Fax:        (514) 397-3493 / (514) 397-3019
E-mail:     gmartel@stikeman.com /
jreynaud@stikeman.com

**Interim Lender:** McCarthy Tétrault LLP
Attention: Philippe H. Bélanger / Jocelyn Perreault
Fax: (514) 875-6246
E-mail: pbelanger@mccarthy.ca / jperreault@mccarthy.ca

[63] **DECLARES** that the Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada.

[64] **DECLARES** that either the Monitor, with the prior consent of the Applicants, or RCR International Inc. ("**RCR**") shall be authorized to apply as they each may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders which aid and complement the Order and any subsequent orders of this Court and, without limitation to the foregoing, an order under Chapter 15 of the *U.S. Bankruptcy Code*, for which either the Monitor or RCR shall be the foreign representative of the Applicants. All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Monitor or RCR as may be deemed necessary or appropriate for that purpose.

[65] **REQUESTS** the aid and recognition of any Court or administrative body in any Province of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the United States of America and any court or administrative body elsewhere, to act in aid of and to be complementary to this Court in carrying out the terms of the Order.

[66] **ORDERS** the provisional execution of the Order notwithstanding any appeal.

[67] **WITHOUT COSTS.**

Montreal, January 16, 2018

.s.c.

The Honourable Michel A. Pinsonnault, J.S.C.